UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAQUAN HENDERSON,

       Petitioner,                    Case No. 1:15-cv-1144

v.                                      Honorable Paul L. Maloney

SHANE JACKSON,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jaquan Henderson is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. On July 6, 2012, a Kalamazoo County Circuit Court jury found Petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317, assault with intent to commit murder (AWIM), MICH. COMP. LAWS § 750.83, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MICH. COMP. LAWS § 750.227b. On July 30, 2012, the court sentenced Petitioner as a habitual offender-fourth offense, MICH. COMP. LAWS § 769.12, to concurrent prison terms of 35 to eighty years for the murder and the AWIM convictions and 76 months to thirty years for the felon-in-possession conviction. Petitioner was also ordered to serve concurrent terms of two

years' imprisonment for each felony firearm conviction, consecutive to his other sentences.

Petitioner has filed a habeas corpus petition raising three grounds for relief, as follows:

> I. Whether the trial court reversibly erred in failing to instruct the jury on duress, when there was evidence that [Petitioner] shot his gun only in response to being threatened with a shotgun by a co-defendant, and therefore violated [Petitioner's] Fourteenth Amendment rights to due process and to a fair trial.
>
> II. [Petitioner's] convictions for second degree murder and assault with intent to commit murder must be vacated because there is insufficient evidence of malice and/or intent to kill to sustain the convictions beyond a reasonable doubt.  U.S. Const. Am. XIV.
>
> III. [Petitioner's] conviction for assault with intent to commit murder must be reversed due to a structural error in the jury instructions, i.e. failure to instruct on one of the essential elements of the offense.

(Attach. A to Pet., ECF No. 1, PageID.10.)  Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they lack merit and because habeas issue III has been procedurally defaulted.

Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds lack merit.  Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual allegations

On January 8, 2012, Petitioner ("Quan") armed with a .380 handgun, Robert Wright ("Plug") armed with a 44 handgun, and Steven Anderson ("B") armed with a

12-gauge shotgun, took up positions near a home in Kalamazoo where Romney Hunter ("Riggs") and his friends were drinking and working on a car sound system. Quan, Plug, and B opened fire, killing Riggs and injuring Troy Whitfield.[1] Riggs was killed with a 44 slug. Whitfield was injured by buckshot. Those facts are not disputed.[2]

Petitioner met up with Plug on the evening of January 8, 2012, expecting to exact revenge for Rigg's beating and robbery of Plug a few weeks earlier. (Trial Tr. V, ECF No. 6-7, PageID.1070.) According to Petitioner, however, that revenge was to take the form of a physical beating. (*Id.*) When Petitioner and Plug were joined by B, the trio headed towards Riggs' location. (*Id.*, PageID.1071.) B indicated he had no intention of fighting; rather, he planned "to body one of them . . . ." (*Id.*) B then revealed that he had a shotgun. (*Id.*, PageID.1072-1073.) When Petitioner realized that vengeance would take the form of gunshots rather than fisticuffs, he tried to withdraw. (*Id.*) Petitioner claims that B secured Petitioner's continuing participation by threatening Petitioner with the shotgun. (*Id.*, PageID.1072-1073, 1075.) The group proceeded to the home on Rose Street. (*Id.*, PageID.1073-1074.) B and Petitioner were behind the home, Plug was in front. (*Id.*, PageID.1074-1076.) B fired the shotgun. (*Id.*, PageID.1076.) Petitioner heard shots from the front. (*Id.*)

---

[1] Plug and B are serving, among other sentences, life sentences for the murder of Riggs.
[2] Petitioner candidly acknowledges that his intent was "the sole disputed issue." (Appl. for Leave to Appeal, ECF No. 1-1, PageID.31.)

3

B directed Petitioner to shoot as well. Petitioner claims he simply fired his handgun into the air a few times and then fled. (*Id.*, PageID.1076-1077.)

B lost his cell phone in the vicinity of the shooting. (Trial Tr. II, ECF No. 6-4, PageID.654; Trial Tr. III, ECF No. 6-5, PageID.675.) The police found the phone and identified suspects based on information from the phone. (Trial Tr. III, ECF No. 6-5, PageID.798, 840-841.)

The prosecutor argued that Petitioner's version of the events was simply not credible. The prosecutor offered testimony regarding the events that preceded and followed the attack that suggested Petitioner's involvement in the assassination was not such a surprise. Perhaps the most compelling evidence was the undisputed fact that Petitioner had brought a handgun to a fistfight.

The prosecutor offered three theories to support varying levels of intent with respect to the murder and AWIM counts. First, the prosecutor contended that the jury could infer a premeditated intent to kill Riggs from Petitioner's conduct. Alternatively, the prosecutor, relying on Petitioner's testimony that B indicated an intent to "run the pockets of" or rob Riggs (Trial Tr. V, ECF No. 6-7, PageID.1107), argued that the intended robbery made Riggs' death felony-murder. Finally, the prosecutor offered the option of second-degree murder. With that lesser charge, the categories of culpable intent were expanded to include intent "to do great bodily harm" or creation of "a very high risk of death or great bodily harm." (Trial Tr. V, ECF No. 6-7, PageID.1199.) The jury opted for second-degree murder.

Throughout Petitioner's testimony, he emphasized that he was compelled to participate and fire his weapon by threats from B. Nonetheless, the court did not instruct the jury regarding the defense of duress. The jury was apparently troubled by Petitioner's claims that he was forced into the armed confrontation by B's threats with the shotgun. Before rendering its verdict, the jury posed the following question to the court: "Is it possible for us to be provided with the legal definition of duress or elements of duress for review?" (Trial Tr. VI, ECF No. 6-9, PageID.1307.) The trial court responded: "You must follow the instructions given to you. Duress is not a defense to homicide murder." (*Id.*, PageID.1307-1308.)

The trial court explained its position with respect to the duress defense after the jury was excused. The court concluded the defense did not apply to the murder charge. (*Id.*, PageID.1317-1318.) The court concluded that it was not factually supported with respect to the felon-in-possession charge. (*Id.*, PageID.1318.) The court stated that it would have read the duress instruction with respect to the AWIM charge "[i]f it had been requested." (*Id.*) Because it was not requested or otherwise presented in argument, the court determined it was waived. (*Id.*, PageID.1318-1319.)

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals raising the three issues he raises in his habeas petition. (Appellant's Br., ECF No. 6-11, PageID.1357.) In a published opinion issued June 26, 2014, the Michigan Court of Appeals affirmed the trial court with respect to all three issues. (Mich. Ct. App. Op., ECF No. 6-11, PageID.1338-1343.) The appellate court determined that duress was not a defense to either the murder charge

5

or the AWIM charge, that the jury had been properly instructed, and that there was sufficient evidence to support the murder and AWIM guilty verdicts. (*Id.*)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same three issues. (Appl. for Leave to Appeal, ECF No. 6-12, PageID.1452, 1463, 1469.) The Michigan Supreme Court denied leave by order entered November 25, 2014. (Mich. Ord., ECF No. 6-12, PageID.1439.)

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.) Instead, he filed this habeas petition on November 2, 2015. (Pet., ECF No. 1, PageID.15.)

## II. AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words,

"[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Duress

Petitioner claims that the trial court's failure to instruct on the defense of duress violated his Fourteenth Amendment right to due process. Not every claimed instructional error rises to the level of a constitutional violation. The Supreme Court has defined the subcategory of instructional errors that warrant habeas relief very narrowly. *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.")).

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When a jury is not properly instructed with regard to the elements of the charged crime, the

due process right to proof beyond a reasonable doubt is implicated. *Sandstrom v. Montana*, 442 U.S. 510 (1979). It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. ").

Similarly, the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). Nonetheless, it is also the prerogative of the state to define whether or not a defense applies to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .")

Here, the Michigan Court of Appeals stated that the defense of duress does not apply to the crimes of murder or AWIM. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v.*

*Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

As the Sixth Circuit explained in *Gimotty*, 40 F. App'x at 29 "the decision of the Michigan courts that duress was not a defense to the charges in petitioner's case was not contrary to Michigan law, and the trial court's refusal to charge on duress in regard to these charges did not violate due process, nor did it result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law." *Id.*, at 33. The same is true in Petitioner's case. State law does not require the allowance of duress as a defense to murder or AWIM charges. Petitioner has failed to cite any federal law, much less clearly established federal law, that requires the allowance of duress as a defense to murder or AWIM. Under those circumstances, Petitioner cannot prevail on his claim that he is entitled to habeas relief for the trial court's failure to instruct the jury on the defense of duress.

### IV. Sufficiency of the evidence

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson,* 443 U.S. at 319, which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals rejected Petitioner's sufficiency arguments:

> Viewing the evidence in this case in the light most favorable to the prosecution, it is plain that there was sufficient evidence to support defendant's convictions and, in particular, to establish that he possessed the requisite intent for each offense. The evidence showed that defendant and his accomplices, Steven Anderson and Robert Wright, believed that one of the victims had been involved in assaulting and robbing Wright a month before the present shooting. Defendant had previously told Wright that he would help him "whoop" those involved with the assault and, by defendant's own admission, he went to the murder scene intending to fight one of the victims in exchange for money. While claiming that he only intended a fistfight, defendant brought a .380 caliber handgun to the scene. He brought this gun knowing that Wright wanted to kill those involved in his assault. Anderson and Wright also had guns. Further, defendant admitted that he was present at the shooting and that he, like Wright and Anderson, fired his gun. Consistent with this admission, police recovered six .380 caliber shells at the scene, a shotgun casing, and later, at another location, spent cartridges for the .44 caliber weapon that had been used by Wright and disposed of by Anderson. As a result of the shooting, one victim was fatally shot in the chest. The other victim suffered gunshot wounds to the leg. As indicated in *Robinson*, 475 Mich at 15, a "defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." The testimony rationally supported a finding that defendant intended to aid or abet a murder, that he had knowledge that a murder was going to be committed, or that he intended to aid and abet conduct or an offense for which the natural and probable consequence was a homicide.
>
> Furthermore, defendant, like Wright and Anderson, fled after the shooting. Defendant then proceeded to disassemble his gun, and he disposed of all three guns in the Kalamazoo River. He also destroyed the cellular telephone that he had been using to communicate with Wright on the day of the shooting. He repeatedly lied to police about his involvement, notably withholding information about which gun he had fired until police deliberately misled him by indicating that the shotgun blast had killed the victim. Only when misinformed in this manner did defendant acknowledge that he fired the .380 caliber weapon, and, when asked why he withheld this information, he told police that he did not want to say anything until he knew which gun was actually the murder weapon. From this evidence, a jury could reasonably infer that

> defendant feared that he might have fired the fatal shot, meaning that, contrary to defendant's claims, he did aim at the victims, intending to kill them. Overall, the evidence was sufficient to support defendant's convictions of second-degree murder and AWIM.
>
> In arguing to the contrary on appeal, defendant maintains that he went to the scene at Wright's behest for a fistfight, not a shooting, and that he fired his weapon harmlessly into the air. These arguments do not entitle him to relief, however, because the credibility of these assertions was a question for the jury, and it was free to reject his testimony in this regard. *See Wolfe*, 440 Mich at 515. Defendant also again raises the question of duress, arguing that the jury should have been instructed on this defense and that, if properly instructed, the jury likely would have acquitted him. However, as discussed earlier, defendant was not entitled to a duress instruction and, consequently, his arguments in this regard lack merit. Ultimately, the jury disbelieved defendant's claims and concluded that the requisite intent to kill for AWIM and the requisite malice for second-degree murder had been proved. There was sufficient evidence to support the jury's conclusions in this regard, and reversal is unwarranted.

(Mich. Ct. App. Op., ECF No. 6-11, PageID.1342-1343.)

Petitioner does not challenge the determinations of fact upon which the Michigan Court of Appeals rested its sufficiency decision. Instead, Petitioner ignores the evidence that favors the prosecutor and invites this Court to view the evidence in a light that favors Petitioner and independently assess the credibility of the witnesses, particularly Petitioner. (Appl. for Leave to Appeal, ECF No. 1-1, PageID.32) ("[I]f Defendant's version is believed, he neither gave encouragement or assistance, nor intended the crime.") Petitioner asks the Court to turn the *Jackson* standard on its head.

Petitioner has failed to demonstrate that the Michigan Court of Appeals' sufficiency decisions are based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Instead, the factual

13

determinations upon which the state appellate court relied, as set forth in the block quote above, are well-supported in the record. Indeed, most of those determinations were taken directly from Petitioner's testimony.

Petitioner has similarly failed to show that the Michigan Court of Appeals' decision is contrary to, or an unreasonable application of, *Jackson*—the clearly established federal law regarding sufficiency of the evidence. Accordingly, Petitioner is not entitled to habeas relief on his challenge to the sufficiency of the evidence.

### V. AWIM instructions regarding intent

Petitioner's separate challenge to the AWIM instruction also derives from his contention that duress is a valid defense to a charge of AWIM. The trial court instructed the jury regarding AWIM as follows:

> In count three, the defendant is charged with the crime of assault with intent to murder. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
>> First, that the defendant tried to physically injure another person.
>>
>> Second, that when the defendant committed the assault, he had the ability to cause an injury or at least believed that he had the ability.
>>
>> Third, that the defendant intended to kill the person he assaulted.

(Trial Tr. VI, ECF No. 6-7, PageID.1200.) Petitioner complains that the instruction as given varies from Michigan's standard instruction in that it excludes optional text. According to Petitioner, the last line of the instruction should have been: "Third, that the defendant intended to kill the person he assaulted [and the circumstances did not

14

legally excuse or reduce the crime.]" (Appl. for Leave to Appeal, ECF No. 1-1, PageID.33.)

The omission was significant, Petitioner contends, because his actions were excused by duress. (*Id.*) ("Defendant submits that, given the centrality of the concept that duress was the moving factor behind Defendant's actions in this case, that the refusal to instruct on [the third element], is a structural error requiring reversal."). The Michigan Court of Appeals disagreed with Petitioner's analysis. The court acknowledged that jury instructions "must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." (Mich. Ct. App. Op., ECF No. 6-11, PageID.1338.) The court explained, however, that the bracketed language was not material to Petitioner's case:

> Defendant contends that the failure to include this language eliminated the prosecution's obligation to prove that, had the assault with intent to kill been successful, it would have amounted to murder. Defendant ties the failure to instruct on the matter to the issue of duress, claiming that duress constituted a legal excuse. However, we have already rejected the duress argument, and defendant does not set forth any other mitigating basis that would have necessitated the instructional language that was not included by the court in instructing the jury.

(*Id.*, PageID.1341.)

For the reasons set forth in § III, *supra*, this Court is bound by the state court's determination that duress is not a defense to AWIM. Other than duress, Petitioner does not identify any other circumstance that might "legally excuse or reduce the crime." Thus the court of appeals' supporting factual determination—that Petitioner does not set forth any other mitigating basis that would necessitate inclusion of the

15

omitted instructional language—is well supported by the record. The omission of the bracketed language did not detract in any way from the prosecutor's obligation to prove every element of the offense. *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) ("In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement.") (citing *Sandstrom*, 442 U.S. at 520-21). Accordingly, the Petitioner has failed to establish that the state appellate court's validation of the instruction as given is contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief with respect to the AWIM instruction.

## **Certificate of Appealability**

Unless the Court issues a certificate of appealability, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:   December 27, 2017              /s/ Phillip J. Green
                   PHILLIP J. GREEN
                   United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).